UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-24742-BLOOM/Otazo-Reyes

MINDBASEHQ LLC,

    Plaintiff,

v.

GOOGLE LLC,

    Defendants.

_____/

### FIRST AMENDED COMPLAINT[1]

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against the defendant, Google LLC ("Google"), that relates to two U.S. patents owned by the plaintiff, MindbaseHQ LLC ("Mindbase"): U.S. Patent Nos. 6,510,433 ("the '433 Patent") and 6,665,680 ("the '680 Patent") (collectively, the "Patents-in-Suit").

### PARTIES

1. Mindbase is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Delray Beach, Florida.

2. Google is a limited liability company organized and existing under the laws of the State of Delaware, with a regular and established place of business at 1450 Brickell Avenue, Miami, Florida 33131.

---

[1] Plaintiff, MindbaseHQ, LLC, files this First Amended Complaint, pursuant to Rule 15(a)(2), Fed. R. Civ. P., based on the written consent of Defendant, Alphabet, Inc., who is no longer named in the operative pleading, and the newly-added Defendant, Google LLC, both of whom are represented in this matter by the same counsel.

## JURISDICTION AND VENUE

3. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and more particularly 35 U.S.C. § 271.

4. This Court has federal question jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5. Google is subject to this Court's general personal jurisdiction pursuant to due process and/or the Florida Long Arm Statute, Fla. Stat. § 48.193, due at least to its substantial business conducted in this District, including: (i) having a regular and established place of business in this District in Miami; (ii) having solicited business in the State of Florida, transacted business within the State of Florida and attempted to derive financial benefit from residents of the State of Florida in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (iii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Florida and in this District, and (iv) having committed the complained of tortious acts in Florida and in this District.

6. Google, directly and/or through subsidiaries and agents makes, imports, ships, distributes, offers for sale, sells, uses, and advertises, including offering products and services through its websites, its products and/or services in the United States, the State of Florida, and the Southern District of Florida. Google is also subject to specific personal jurisdiction in this District.

7. This Court's exercise of personal jurisdiction over Google is consistent with the Florida Long Arm Statute, Fla. Stat. § 48.193, and traditional notions of fair play and substantial justice.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because, upon information and belief, Google has committed acts of infringement in this District and

maintains a physcial place of business in this District with offices at 1450 Brickell Avenue, Suite 900, Miami Florida, 33131.  Upon information and belief, Google's offices at 1450 Brickell Avenue, Suite 900, Miami Florida, 33131, constitute real property or lease hold property interests owned by Google or its subsidiaries or agents where employees of Google or agents of Google conduct business for and on behalf of Google, including the infringing acts described herein.

## MINDBASE'S PATENTED TECHNOLOGY

9. Mindbase is the owner of the Patents-in-Suit.  Gary Sharp, co-founder, CEO, and co-owner of Mindbase, is the co-inventor of the Patents-in-Suit.  A copy of the '433 Patent is attached hereto as Exhibit 1.  A copy of the '680 Patent is attached hereto as Exhibit 2.

10. On January 21, 2003, the '433 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

11. On December 16, 2003, the '680 Patent was duly and legally issued by the USPTO.

12. Claim 13 of the '433 Patent provides:

> A database of information stored in a fixed medium, said database comprising:
>
> a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect;
>
> a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed;
>
> said set of intangible data elements including a first subset of effect data elements, said effect data elements representing verbs standing alone and in combination with other words, which describe actions, objectives, results, missions, procedures and processes;

said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements;

wherein each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and each said effect element is linked to each said tangible data element required for said effect to occur; and

wherein at least one of each said link between a tangible data element and an intangible data element is itself linked to at least one specific degree of performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

13. Claim 13 of the '680 Patent provides:

   1. A database of information stored in a fixed medium, said database comprising:

   a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect;

   a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed;

   said set of intangible data elements including a first subset having effect data elements, said effect data elements representing at least one among verbs standing alone and verbs in combination with other words, which describe at least one among said tangible data elements, actions, objectives, results, missions, procedures and processes;

   said set of intangible data elements including a second subset having descriptive data elements, said descriptive data elements describing at least one among said tangible data elements, said effect data elements, degrees of performance of said tangible data elements, and the nature of the relationship between

4

> the tangible data elements and the effect data elements;
>
> wherein each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and, each said effect element is linked to each said tangible data element required for said effect to occur; and
>
> wherein at least one of each said link between a tangible data element and an intangible data element is itself linked to at least one specific degree of performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

14. The claims of the Patents-in-Suit are directed to patent-eligible concepts.

15. The claims of the Patents-in-Suit involve more than the performance of well-understood, routine, and conventional activities previously known to the industry.

16. Prior to the Patents-in-Suit, those skilled in the art of databases in the database industry did not categorize data elements into specific categories with rules for storing and manipulating each type of data element so databases routinely and conventially could not be automatically integrated into a single database because expensive reprogramming was necessary to fully integrate the relationships in two or more heterogeneous databases. Organizations had to operate with more than one database and all data relationships could not be kept online at all times. Existing database models at that time were limited in the number of relationships that could be kept online at any one time. This limited the operational capacity of databases in such areas as universal searches on relationships.

17. The Patents-in-Suit depart from from earlier approaches in database science to offer specific asserted improvements in the database industry.

## GOOGLE'S INFRINGING PRODUCTS

18. Google has directly infringed claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused database goods and/or services in this District and elsewhere in the United States that include the apparatus and methods claimed in the Patents-in-Suit.

19. Infringing Google products include the Google internet search and Google Ads (collectively, "the Google Accused Services").

## **COUNT I: INFRINGEMENT OF U.S. PATENT 6,510,433**

20. Mindbase incorporates by reference the allegations set forth in Paragraphs 1 through 19 of this Complaint as though set forth in full herein.

21. Google makes, uses, sells, offers for sale, and/or imports databases and database processes, including, for example, at least those in use in the Google Accused Services.

22. Google has and continues to make, use, sell, and/or offer for sale and/or import the Google Accused Services.

23. The Google Accused Services meet each and every element of claim 13 of the '433 Patent in addition to each and evey element of other claims of the '433 Patent.

24. The excerpts below provide a high-level overview of the structure and functionality of, for example, Google searches:

> Google Search works hard to understand the content of a page. You can help us by providing explicit clues about the meaning of a page to Google by including structured data on the page. Structured data is a standardized format for providing information about a page and classifying the page content; for example, on a recipe page, what are the ingredients, the cooking time and temperature, the calories, and so on.
>
> Google uses structured data that it finds on the web to understand the content of the page, as well as to gather information about the web and the world in general. For example, here is a JSON-LD structured data snippet that might appear on a recipe page, describing the title of the recipe, the author of the recipe, and other details:

https://developers.google.com/search/docs/guides/intro-structured-data (last accessed October 19, 2020).

https://developers.google.com/custom-search-ads (last accessed October 19, 2020).

25. The technology behind Google Accused Services include a database of information stored in a fixed medium.

26. The technology behind Google Accused Services includes a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect.

27. The technology behind Google Accused Services includes a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed.

28. The technology behind Google Accused Services includes said set of intangible data elements including a first subset of effect data elements, said effect data

elements representing verbs standing alone and in combination with other words, which describe actions, objectives, results, missions, procedures and processes.

29. The technology behind Google Accused Services includes said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements.

30. Google Accused Services include said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements; wherein each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and each said effect element is linked to each said tangible data element required for said effect to occur; wherein at least one of each said link between a tangible data element and an intangible data element is itself linked to at least one specific degree of performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

31. The technology behind Google has directly infringed the '433 Patent by making using,selling, offering for sale and/or importnig the Google Accused Services and continues to infringe the '433 Patent under 35 U.S.C. § 271(a).

32. As a direct and proximate result of Google's acts of patent infringement, Mindbase has been and continues to be injured and has sustained, and will continue to sustain, damages.

### COUNT II: INFRINGEMENT OF PAT. 6,665,680

33. Mindbase reasserts and realleges the foregoing Paragraphs 1 thorugh 19 of this Complaint as though set forth fully herein.

34. Google has and continues to make, use, sell, and/or offer for sale the Google Accused Services.

35. The technology behind the Google Accused Services meets each and every element of claim 13 of the '680 Patent in addition to each and evey element of other claims.

36. The excerpts below provide a high-level overview of the structure and functionality of, for example, Google searches:

> Google Search works hard to understand the content of a page. You can help us by providing explicit clues about the meaning of a page to Google by including structured data on the page. Structured data is a standardized format for providing information about a page and classifying the page content; for example, on a recipe page, what are the ingredients, the cooking time and temperature, the calories, and so on.
>
> Google uses structured data that it finds on the web to understand the content of the page, as well as to gather information about the web and the world in general. For example, here is a JSON-LD structured data snippet that might appear on the contact page of the Unlimited Ball Bearings corporation, describing their contact information:

https://developers.google.com/search/docs/guides/intro-structured-data  (last accessed October 19, 2020).

> **The ads you've been searching for**
>
> Monetize search results in your site, mobile site or mobile application just like Google. By adding just a few lines of code, we can match our highly targeted ads with your search results. You control the look and feel; we deliver the ads. When users click, you earn revenue. Apply for Custom Search Ads today.
>
> Apply now
>
> **AdSense ads designed for search results pages**
>
> | More Relevance, More Revenue | As Seen on Google | Completely Customizable |
> |---|---|---|
> | Custom Search Ads uses the search query to deliver highly targeted, relevant ads. The result is satisfied users and more revenue. | Leverage the expertise and unique ad formats found on Google while accessing our partner network of over one million advertisers. | Custom Search Ads can be customized to the look and feel of your site. Size, location, color and font are all in your control. |

https://developers.google.com/custom-search-ads  (last accessed October 19, 2020).

37. The technology behind Google Accused Services includes a database of information stored in a fixed medium.

38. The technology behind Google Accused Services includes a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect.

39. The technology behind Google Accused Services includes a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed.

40. The technology behind Google Accused Services includes said set of intangible data elements including a first subset having effect data elements, said effect data elements representing at least one among verbs standing alone and verbs in combination with other words, which describe at least one among said tangible data elements, actions, objectives, results, missions, procedures and processes.

41. The technology behind Google Accused Services includes said set of intangible data elements including a second subset having descriptive data elements, said descriptive data elements describing at least one among said tangible data elements, said effect data elements, degrees of performance of said tangible data elements, and the nature of the relationship between the tangible data elements and the effect data elements.

42. Google Accused Services include said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements; wherein each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and each said effect element is linked to each said tangible data element required for said effect to occur; wherein at least one of each said link between a tangible data element and an intangible data

element is itself linked to at least one specific degree of performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

43. Google directly infringes the '680 Patent by making using,selling, offering for sale the Google Accused Services and continues to infringe the '680 Patent under 35 U.S.C. § 271(a).

44. As a direct and proximate result of Google's acts of patent infringement, Mindbase has been and continues to be injured and has sustained, and will continue to sustain, damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Mindbase requests that this Court enter judgment in its favor and against the defendant Google, Inc. as follows:

A. Adjudging, finding, and declaring that Google has infringed the Patents-in-Suit under 35 U.S.C. § 271;

B. Awarding the past damages arising out of Google's infringement of the Patents-in-Suit to Mindbase in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

D. Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

E. Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F. Granting Mindbase such other further relief as is just and proper, or as the Court deems appropriate.

## JURY DEMAND

Mindbase demands a trial by jury on all issues that may be so tried.

Dated: January 11, 2021                                     Respectfully submitted,

                                                                */s/ Alen H. Hsu*
Alen H. Hsu, Esquire
Florida Bar No. 62495
Anne R. Flanigan
Florida Bar No. 113889
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
1200 N. Federal Highway
Suite 312
Boca Raton, FL 33432
Telephone: (561) 835-2111
Email: ahsu@wsh-law.com
        aflanigan@wsh-law.com

James Iaconis, Esquire*
Texas Bar No. 24080954
Iaconis Law Office
P.O. Box 450473
Miami, FL  33245
Email:  james.iaconis@iaconislaw.com


R. Terry Parker, Esquire*
Massachusetts Bar No. 569008
RATH, YOUNG and
PIGNATELLI, P.C.
120 Water Street, Second Floor
Boston, MA 02109
Telephone: (603) 226-2600
Email: rtp@rathlaw.com

*Attorneys for Plaintiff*
*\*Admitted Pro Hac Vice*